IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **SHANE NOONAN**, Individually and as Personal Representative of the **ESTATE OF JEFFREY A. NOONAN**, of Saco, County of York and State of Maine, | ) ) ) ) ) ) |
| Plaintiff | ) |
| v. | ) ) |
| **YORK COUNTY**, State of Maine, | ) ) |
| **MAURICE OUELLETTE**, in his official and individual capacity as Sheriff of York County, | ) ) ) ) |
| **JAY BONDAR**, in his official and individual capacity as Corporal of the York County Sheriff's Department in the Corrections Division, | ) ) ) ) ) ) |
| **STEPHEN KURTZ**, in his official and individual capacity as Corporal of the York County Sheriff's Department in the Corrections Division, | ) ) ) ) ) ) |
| **MICHAEL K. LEARY**, in his official and individual capacity as a Corrections Officer of the York County Sheriff's Department, | ) ) ) ) ) |
| **COREY WAKEFIELD**, in his official and individual capacity as a Corrections Officer of the York County Sheriff's Department, | ) ) ) ) ) |
| **EMILY ANGER**, in her official and individual capacity as a Corrections Officer of the York County Sheriff's Department, | ) ) ) ) ) |

1

| | |
|---|---|
| **JOHN AND JANE DOES**, in | ) |
| their official and individual | ) |
| capacities as Employees, | ) |
| Administrators, Officials | ) |
| Policymakers, | ) |
| | ) |
| **CORRECT CARE** | ) |
| **SOLUTIONS, LLC**, a Limited | ) |
| Liability Corporation duly licensed | ) |
| to do business in the State of | ) |
| Maine, | ) |
| | ) |
| **GEORGE STOCKWELL, D.O.**, | ) |
| of Town of Windham, County of | ) |
| Cumberland, State of Maine | ) |
| | ) |
| **SARAH MAYNARD, LVN** | ) |
| of Town of Kennebunkport, | ) |
| County of York and State of | ) |
| Maine, | ) |
| | ) |
| **ANGELA TANNER, LVN** | ) |
| of Town of Hollis, County of York | ) |
| and State of Maine, | ) |
| Defendants | ) |

## COMPLAINT AND REQUEST FOR JURY TRIAL

NOW COMES the Plaintiff, Shane Noonan, individually and as Personal Representative of the Estate of Jeffrey A. Noonan, by and through counsel and complains against the Defendants as follows:

## NATURE OF THE CASE

I.      This case involves the death of pretrial detainee Jeffrey Noonan at the York County Jail on January 12, 2014 as a result of the above-named Defendants' individual and collective failures to properly monitor and care for his medical and mental health conditions. More particularly, Plaintiff avers that the Defendants (1) failed to properly address, act on and/or respond to Mr. Noonan's declining mental and physical condition; (2) failed to continue

providing Mr. Noonan's prescribed medications for his long-term physical and mental health conditions; and (3) failed to appropriately respond to his threats to commit suicide, which he expressed in specific detail to medical professionals outside the jail as he was receiving dialysis on January 11, 2014.  The Corrections officials also failed to continue the one-to-one observation they had initiated as a suicide precaution.  Medical personnel at the jail failed to respond to the physical and emotional distress and anxiety Mr. Noonan exhibited and to appreciate the severity of his condition. As a result, Mr. Noonan was found unresponsive in his cell the next morning, January 12, 2014, having uncapped and unplugged his dialysis catheter, which caused him to bleed to death – the exact threat he had made less than twenty-four hours before.

## JURISDICTION AND VENUE

II.      This claim is brought under the Civil Rights Act of 1871, 42 U.S.C. §1983. This Court has jurisdiction to hear this claim under 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. Venue is proper in this Division, as the acts and omissions complained of occurred in this District.

## PARTIES

1.      Plaintiff, Shane Noonan, is the duly appointed Personal Representative of the Estate of Jeffrey A. Noonan, his father, now deceased and late resident of the City of Saco, County of York and State of Maine.

2.      Defendant York County is a municipality of the State of Maine.

3.      Defendant Maurice Ouellette was the Sheriff of York County, State of Maine, at the time of the incident, and in his capacity as Sheriff of York County was responsible for the oversight and operations of the York County Jail and is a "person" under 42 U.S.C. §1983, was acting under color of state law, and is being sued in his individual and official capacities.

3

4.     Defendant Corporal Jay Bondar was, at all times relevant, a Corrections Officer with the York County Jail, is a "person" under 42 U.S.C §1983, was acting under color of state law, and is being sued in his individual and official capacities.

5.     Defendant Corporal Stephen Kurtz was, at all times relevant, a Corrections Officer with the York County Jail, is a "person" under 42 U.S.C §1983, was acting under color of state law, and is being sued in his individual and official capacities.

6.     Defendant Michael K. Leary was, at all times relevant, a Corrections Officer with the York County Jail, is a "person" under 42 U.S.C §1983, was acting under color of state law, and is being sued in his individual and official capacities.

7.     Defendant Corey Wakefield was, at all times relevant, a Corrections Officer with the York County Jail, is a "person" under 42 U.S.C §1983, was acting under color of state law, and is being sued in his individual and official capacities.

8.     Defendant Emily Anger was, at all times relevant, a Corrections Officer with the York County Jail, is a "person" under 42 U.S.C §1983, was acting under color of state law, and is being sued in her individual and official capacities.

9.     Defendants John and Jane Does were at all times relevant to this action employees, administrators, officials or policymakers of York County. They are sued in their individual and official capacities. Each John and Jane Doe is a person under 42 U.S.C. §1983, and each acted under color of state law at all times relevant to this case. Each violated Plaintiff's decedent's legal and constitutional rights by failing to provide adequate training to the Corrections Officers which would have provided Mr. Noonan constitutionally adequate medical care while he was incarcerated, and their failure to do so resulted in his death.

10.     Defendant Correct Care Solutions, LLC ("CCS") was at all times relevant hereto a limited liability corporation duly licensed to do business in the State of Maine with a principal place of business in Augusta, Maine.  Defendant CCS had contracted with the York County Sheriff's Department to provide medical and mental health services to inmates at the York County Jail.  Due to this contractual relationship, at all times relevant to this Complaint, CCS was acting under color of state law and as a corporation is a "person" for purposes of 42 U.S.C. § 1983.

11.     Defendant George Stockwell, D.O. was at all times material hereto an employee of Defendant CCS who provided medical care in the course and scope of his employment to inmates at York County Jail, including Plaintiff's decedent, and is a resident of the Town of Windham, County of Cumberland and State of Maine.

12.     Defendant Sarah Maynard, LVN was at all times material hereto an employee of Defendant CCS who provided nursing care in the course and scope of her employment to inmates at York County Jail, including Plaintiff's decedent, and is a resident of the Town of Kennebunkport, County of York and State of Maine.

13.     Defendant Angela Tanner, LVN was at all times material hereto an employee of Defendant CCS who provided nursing care in the course and scope of her employment to inmates at York County Jail, including Plaintiff's decedent, and is a resident of the Town of Hollis, County of York and State of Maine.

## FACTS COMMON TO ALL COUNTS

14.     Jeffrey Noonan was a 49 year old man living in Saco, Maine, who suffered from thyroid disorder, high blood pressure, asthma, and end stage renal disease.

15.    He received dialysis three times per week for his renal disease, was being treated for long-term chronic pain, and had had his left hand and part of his right leg amputated.

16.    Mr. Noonan had a number of medications prescribed to him to treat and manage his various medical conditions.

17.    On or about January 9, 2014, Jeffrey Noonan was arrested on an allegation of failure to appear in court, and he was transported to York County Jail.

18.    During his receiving screening at the jail on January 9, 2014, Mr. Noonan explained all of the medical conditions for which he was being treated and listed all of the medications he was taking for his serious physical and mental health care needs.

19.    Supervising physician, Defendant George Stockwell, D.O, did not approve or provide Mr. Noonan with three of his prescribed medications, Oxycodone, Xanax and a Fentanyl patch, despite his chronic conditions.

20.    York County Jail personnel and Dr. Stockwell knew or should have known that abrupt cessation of prescribed medications for Mr. Noonan's chronic conditions would cause those chronic conditions to be untreated, would, more likely than not, trigger severe withdrawal symptoms and pain, and could cause an increase in his anxiety.

21.    On or about January 11, 2014, Jeffrey Noonan was transported from the jail to York County Dialysis Center in Biddeford, Maine by Defendants and York County Sheriff's Department Officers Michael K. Leary and Corey Wakefield for dialysis treatment.

22.    Mr. Noonan had not had his regular dialysis treatments in approximately one week.

23.    While at York County Dialysis Center, Mr. Noonan exhibited unstable behavior and made certain statements to the staff at York County Dialysis Center that indicated he was going to attempt suicide by uncapping and/or removing his central venous catheter.

24.    Mr. Noonan was evaluated by Hilary F. Damon, RN, who noted that he was "crying out in pain and upset."

25.    Mr. Noonan informed Nurse Damon that he was not receiving pain medication at the jail and was withdrawing.

26.    Mr. Noonan stated to Nurse Damon that he was dying and he did not "want to do this anymore."

27.    Mr. Noonan asked Nurse Damon whether ripping the central venous catheter out of his chest would kill him.

28.    Nurse Damon advised Mr. Noonan that he could die if he removed the catheter and that the catheter could be used for life sustaining medical treatments.

29.    Mr. Noonan repeated that he "wanted to die."

30.    Nurse Damon reported her interactions with Mr. Noonan to Dr. Patricia Cantlin, the on-call physician.

31.    Mr. Noonan asked Kerry Czarnecki, R.N. how long it would take him to die if he pulled his catheter out.

32.    Nurse Czarnecki observed that Mr. Noonan was "making strong erratic movements in [the] chair" and described him as "restless and jittery."

33.    Katherine Margarones, a Licensed Clinical Social Worker at York County Dialysis, reported to Nurse Czarnecki that Mr. Noonan said he wanted to die rather than be in jail.

34.    Nurse Czarnecki told Ms. Margarones to draft a letter to send to the jail personnel informing them of Mr. Noonan's statements.

35.    Deputy Michael Leary observed that Mr. Noonan was agitated the entire time he was on dialysis.

36.    The officers spoke with Sergeant Seaman to tell him that Mr. Noonan's dialysis was not going well and Mr. Noonan may need to be admitted to the hospital, and Sergeant Seaman reported this to the jail.

37.    Sergeant Seaman later called the jail again and stated that Mr. Noonan would be watched for an hour, that his issues were "part medical and part anxiety," and that if stable, he would return to the jail later.

38.    The nurses told Mr. Noonan they could send him to the Emergency Department for the symptoms he was then experiencing, but that he was medically stable and was not in immediate medical danger, and his dialysis treatment was not complete yet.

39.    Mr. Noonan decided to complete his dialysis treatment.

40.    Prior to his discharge from the dialysis center, staff from York County Dialysis Center informed York County Sheriff's Department Officers Michael K. Leary and Corey Wakefield of the suicidal statements Mr. Noonan had made.

41.    Additionally, Ms. Margarones, the social worker, wrote a letter outlining the suicidal comments made by Mr. Noonan, which she placed in a sealed envelope and provided to the officers.

42.    In her letter, Ms. Margarones stated that Mr. Noonan told her "that if he ends up going [to] county jail for four years after his court appearance on Monday January 13, 2014 he would do himself harm."

43.    In her letter, Ms. Margarones also reported: "Jeff stated he knew how to 'take off the [catheter] caps…' thus introducing germ [sic] to this catheter which leads directly to his heart."

44.    Ms. Margarones directly stated in her letter: "I am concerned for Jeff and would like a social worker, or other support person, to see him and discuss his fears with him.  This is a challenging situation for anyone, let alone a dialysis patient with Jeff's physical issues."  She left her contact information in case anyone wanted to follow up.

45.    The Officers returned Mr. Noonan to York County Jail at approximately 5:30 pm on January 11, 2014.

46.    Defendant Sarah Maynard, LVN, received the two letters when Mr. Noonan arrived back at the jail and informed Corporal Jay Bondar about Mr. Noonan's threats to commit suicide by pulling out his central venous catheter.

47.    Nurse Maynard did not report this information to a physician or mental health professional who could address Mr. Noonan's condition.

48.    Mr. Noonan reported to Defendant Corporal Jay Bondar that he had not received his prescription medications and was not feeling well, and expressed suicidal threats to him.

49.    Mr. Noonan was placed in a suicide prevention gown and was placed on one-to-one supervision suicide watch in cell 2133 by Corporal Bondar.

50.    One-to-one supervision for suicide watch entails the officer being at arm's length and keeping eyes on the inmate at all times.

51.    At approximately 9:30 pm on January 11, 2014, Corporal Bondar directed Officer Thomas to stop the direct one-to-one supervision suicide watch.

52.    Corporal Bondar merely told the officers on duty to perform regular checks and "keep a close eye on" Mr. Noonan.

53.     Corporal Bondar failed to report Mr. Noonan's statements about suicide or possible withdrawal to medical or mental health personnel at the jail at any time during his supervisory shift, which he was required to do.

54.     When Defendant Angela Tanner, LVN began her shift, she was told by Nurse Maynard about Mr. Noonan's suicidal threats pertaining to removing the catheter.

55.     Nurse Tanner did not report this information to her supervisors, a physician, or a mental health professional who could address Mr. Noonan's condition.

56.     On January 12, 2014 at approximately 4:30 am, Mr. Noonan said he was not feeling well and asked for a nurse.

57.     At approximately 5:45 am on January 12, Nurse Tanner came to see Mr. Noonan, and he told her that he was not feeling well, that he felt awful and that he felt like he was withdrawing from his medications.

58.     Nurse Tanner told Mr. Noonan he would get medications later.

59.     Nurse Tanner did not take any further action to address Mr. Noonan's physical or mental well-being despite the concerns he raised and did not report their interaction to any medical or mental health personnel at the jail.

60.     On January 12, 2014, at approximately 6:36 am, Officer Kenneth Hamilton checked on Mr. Noonan.  When he reached cell 2133, he saw Mr. Noonan face down in a pool of blood.

61.     Officer Hamilton was unable to detect Mr. Noonan's pulse. Central Control was contacted by radio and a nurse was requested.

62.     When Nurse Tanner arrived, she observed that Mr. Noonan did not have a pulse and was cold.

63.     Nurse Tanner stated that Mr. Noonan pulled his catheter out just like he had threatened at the hospital.

64.     Nurse Tanner noted that Mr. Noonan's eyes were fixed and dilated and his body was mildly stiff and very cold with some mottling in the right arm.

65.     Mr. Noonan's Certificate of Death lists "exsanguination" as the cause of death, along with "extubation of hemodialysis shunt."

### COUNT I – 42 U.S.C. § 1983 (COUNTY AND CORRECTIONS DEFENDANTS)

66.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-65 of this Complaint as though the allegations were fully set forth at length herein.

67.     All County and Corrections Defendants have, acting under color of state law, deprived Jeffrey Noonan, a pretrial detainee, of rights, privileges and immunities secured by the Eighth Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment and applied to the States, including but not limited to the right to be free from cruel and unusual punishment and the right to adequate medical care while incarcerated.

68.     Defendants Bondar, Kurtz, Leary, Wakefield, Anger, Correct Care Solutions (CCS), Stockwell, Maynard, and Tanner (collectively the "Corrections Defendants"), were each "persons" acting under color of state law and were each deliberately indifferent to Jeffrey Noonan's serious medical needs.  Each ignored his threat to commit suicide by removing his central venous catheter.  Each ignored his growing pain, agitation and symptoms of withdrawal from his prescribed medications and failed to address it.  Each failed to appreciate that Mr. Noonan suffered from serious, chronic health conditions that were being untreated because he was not receiving his prescribed medication.  Each failed to report these urgent medical and mental health problems to a physician who could address them. Each ignored Mr. Noonan's need

for pain and anxiety medication, and ignored the obvious distress that Mr. Noonan experienced as a result of that decision. Each ignored Mr. Noonan's suicidal ideation and took him off suicide watch when he most needed one-to-one supervision and medical care. As a result, Mr. Noonan suffered and died.

69.    Defendant Corporal Bondar was deliberately indifferent to Mr. Noonan's serious medical needs by unilaterally removing him from one-to-one supervision, which should have been enforced until a qualified mental health provider had assessed Mr. Noonan. Defendant Bondar did not have the authority, training or credentials to make this determination.

70.    Defendant York County, Defendant Sheriff Ouellette, and John and Jane Does (collectively the "County Defendants") were each "persons" acting under color of state law and were each deliberately indifferent to Mr. Noonan's serious medical needs by failing to adequately train and supervise jail staff and employees of CCS working in the jail to properly recognize and respond when prisoners suffer from obvious serious medical needs, including but not limited to withdrawal from medication, anxiety, pain, suicidal ideation and other symptoms of mental and physical distress.

71.    The County and Corrections Defendants failed to properly train and supervise their employees working in the jail on the policy of the National Commission on Correctional Health Care to provide therapeutic medications, including opioids, when a patient is functioning poorly and his or her pain is not well controlled, as was the case with Mr. Noonan.

72.    As a result of the deliberate indifference to Mr. Noonan's serious medical needs by these Defendants, Mr. Noonan's condition deteriorated and he did not receive adequate treatment and supervision, which he desperately needed based on his obvious suicidal ideation and intent, and he died. The failure to train and supervise was deliberately indifferent and led to the

constitutional violation Mr. Noonan suffered. As a direct and proximate result of these Defendants' actions, Mr. Noonan lost his life.

73.    The rules, regulations, customs, policies and procedures of the Defendants regarding the diagnosis, treatment, and management of prisoners in the Jail with serious medical needs, especially when suffering from mental and physical illness, were inadequate and unreasonable and were the driving force behind the constitutional deprivations suffered by Jeffrey Noonan.

WHEREFORE, the Plaintiff Shane Noonan, as Personal Representative of the Estate of Jeffrey Noonan, demands judgment against the County and Corrections Defendants plus punitive damages, attorneys' fees, interest, costs and such other and further relief as this Court deems just and proper.

## COUNT II – FAILURE TO TRAIN AND SUPERVISE (COUNTY DEFENDANTS)

74.    The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-73 of this Complaint as though the allegations were fully set forth at length herein.

75.    York County, Sheriff Maurice Ouellette, and John and Jane Does, persons acting under color of state law, are responsible for the training of Corrections Officers and insuring the adequate policies and procedures of the York County Jail are developed and complied with by Corrections Officers in the jail.

76.    The rules, regulations, customs, policies and procedures of the County and Corrections Defendants regarding the diagnosis, treatment, and management of prisoners in the jail with serious, urgent medical and mental health needs, especially when suffering from mental and physical illness, were inadequate and unreasonable and were the proximate cause of the constitutional deprivation suffered by Jeffrey Noonan.

77.   Observing Corrections Officers, Supervising Corrections Officers and medical personnel working in the jail were not trained on the proper intake procedures for assessing, understanding and addressing the medical and mental health needs of prisoners and pretrial detainees.

78.   Observing Corrections Officers and Supervising Corrections Officers were not trained on the proper action to take when making observations of a person suffering from anxiety with suicidal ideation who has made direct suicidal threats.

79.   Observing Corrections Officers and Supervising Corrections Officers were not trained on the proper action to take when making observations of a person experiencing withdrawal from pain medications, such as Oxycodone and Fentanyl, and from anxiety medications, such as Xanax.

80.   Specifically, Observing Corrections Officers and Supervising Corrections Officers were not properly educated, trained and trained to supervise their employees working in the jail on policies for patient safety in the jail, including but not limited to the policy of the National Commission on Correctional Health Care to provide therapeutic medications, including opioids, when medically necessary, i.e., when a patient is functioning poorly and his or her pain is not well controlled, as was the case with Mr. Noonan.

81.   Upon observation and belief that Mr. Noonan was experiencing symptoms of withdrawal from his medications, including an anxiety medication, when they knew or or should have known he suffered from anxiety as well as severe chronic health problems such as kidney disease, correctional officers and jail medical personnel took no action to intervene, which would have saved Mr. Noonan's life.

82.     Upon information and belief that Mr. Noonan was having suicidal ideation, when they knew or should have known he had directly expressed an intention to commit suicide by removing his central venous catheter, supervisory correctional officers and jail medical personnel took no action to intervene, which would have saved Mr. Noonan's life.

83.     The inactions and deliberate indifference of observing Correctional Officers, Supervisory Correctional Officers and jail medical personnel working at York County Jail on January 11 and 12, 2014 violated Mr. Noonan's clearly established rights.

84.     York County, Sheriff Ouellette, and John and Jane Does failed to meet their duties by failing to properly train and supervise Correction Officers under their authority and control on the law and policies and procedures concerning attention to medical needs of prisoners.

85.     As a direct and proximate result of the failure of the County Defendants, York County, Sheriff Ouellette, and John and Jane Does, to train and supervise Corrections Officers and jail medical employees under their control, Mr. Noonan suffered physical and mental harm, severe emotional distress, conscious suffering and, ultimately, death by exsanguination.

WHEREFORE, the Plaintiff Shane Noonan, as Personal Representative of the Estate of Jeffrey Noonan, demands judgment against the County Defendants plus punitive damages, attorneys' fees, interest, costs and such other and further relief as this Court deems just and proper.

## COUNT III – NEGLIGENCE (COUNTY AND CORRECTIONS DEFENDANTS)

86.     The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-85 of this Complaint as though the allegations were fully set forth at length herein.

87.   The County and Corrections Defendants individually and collectively owed Mr. Noonan a duty of care to provide safe, secure and humane care to him while housing him as a pretrial detainee in the York County Jail.

88.   The County and Corrections Defendants individually and collectively breached this duty of care to Mr. Noonan by failing to adequately address his suicidal ideation by reporting it to medical personnel who could help Mr. Noonan, failing to provide his prescribed medications to him to treat his serious and chronic health conditions, and failing to provide him with appropriate mental health and medical treatment.

89.   As a direct and proximate result of these Defendants' negligence, Mr. Noonan suffered pain, anxiety, and physical and emotional symptoms due to the Defendants' abrupt cessation of his prescribed medications.

90.   As a direct and proximate result of these Defendants' negligence, Mr. Noonan became suicidal and ultimately died in the jail.

WHEREFORE, the Plaintiff Shane Noonan, as Personal Representative of the Estate of Jeffrey Noonan, demands judgment against the County and Corrections Defendants and damages to compensate the Estate for these breaches of their duty of care, along with interest, costs and such other and further relief as this Court deems just and proper.

## COUNT IV –  WRONGFUL DEATH – 18-A M.R.S.A. § 2-804 (CCS DEFENDANTS)

91.   The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-90 of this Complaint as though the allegations were fully set forth at length herein.

92.   At all times relevant and material hereto, Defendants George Stockwell, D.O., Sarah Maynard, LVN, and Angela Tanner, LVN were employed by Defendant Correct Care Solutions (CCS) to provide medical care to inmates in the York County Jail, including Plaintiff's

decedent, and were acting in the course and scope of their employment as medical providers when they provided medical care and treatment to Mr. Noonan at York County Jail.

93.    Defendant CCS and its agents and employees George Stockwell, D.O., Sarah Maynard, LVN, and Angela Tanner, LVN (collectively the "CCS Defendants") each owed Plaintiff's decedent a duty of care to possess that degree of skill and knowledge ordinarily possessed by similar medical providers; to use their best judgment in the application of that skill; and to use ordinary care in treating the Plaintiff's decedent.

94.    Defendant Stockwell failed to possess the degree of skill and knowledge ordinarily possessed by similar medical providers by abruptly ceasing to provide Mr. Noonan with his long-term prescribed medications that were used to treat his serious, chronic health conditions, and by failing to appreciate the medical and mental health consequences of making that decision, including, but not limited to pain, anxiety and withdrawal.

95.    The CCS Defendants individually and collectively failed to possess the degree of skill and knowledge ordinarily possessed by similar medical providers in that they failed to appropriately monitor Mr. Noonan's condition or respond to his decline; either they did not appreciate the severity of Mr. Noonan's anxiety, possible withdrawal symptoms and suicidal expressions, or they ignored his symptoms and his direct statements regarding these issues and deliberately chose not to treat them.

96.    The CCS Defendants individually and collectively failed to use ordinary care and to exercise their best judgment in the application of their skill in that they failed to report Mr. Noonan's suicidal statements to any physician or psychologist who could have addressed them, either at the jail or at the hospital.

97.   The CCS Defendants' individual and collective failures as described above constitute egregious violations of their duty of care to Mr. Noonan.

98.   As a direct and proximate result of the negligence of the CCS Defendants, as aforesaid, Plaintiff's decedent continued to suffer from untreated medical and mental health problems, including pain, anxiety, medication withdrawal and suicidal thinking and intent, which caused and contributed to his pain and suffering and ultimately, his death.

WHEREFORE, Plaintiff Shane Noonan, as personal representative of the Estate of Jeffrey Noonan, prays that this honorable Court enter judgment in his favor and against the CCS Defendants and award the Estate, pursuant to 18-A M.R.S.A. § 2-804 fair and just compensation for the injuries suffered on account of Jeffrey Noonan's death, including but not limited to:

a)      pursuant to 18-A M.R.S.A. § 2-804(b), fair and just compensation for the loss of comfort and society and companionship of Jeffrey Noonan;

b)      pursuant to 18-A M.R.S.A. § 2-804(b), damages to compensate the Estate of Jeffrey Noonan for the reasonable expenses of medical care and treatment and for reasonable funeral expenses that it incurred;

c)      pursuant to 18-A M.R.S.A. § 2-804(c), damages for the conscious pain and suffering endured by Jeffrey Noonan prior to his death; and

d)      such further relief as this Court deems just and appropriate.

## COUNT V – WRONGFUL DEATH – 18-A M.R.S.A. § 2-804 (COUNTY AND CORRECTIONS DEFENDANTS)

99.   The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-98 of this Complaint as though the allegations were fully set forth at length herein.

100.  At all times relevant and material hereto, Defendants Bondar, Kurtz, Leary, Wakefield and Anger were employed by Defendant York County to monitor and guard inmates in the York County Jail, including Plaintiff's decedent, and were acting in the course and scope of their employment when Mr. Noonan was in their care at York County Jail.

101. Defendant York County, Defendant Sheriff Ouellette, and their agents and employees the Corrections Defendants each owed Plaintiff's decedent a duty to safely guard and house him at York County Jail, including monitoring his health and wellbeing.

102.  The County and Corrections Defendants individually and collectively violated their duty of care to Mr. Noonan in that they did not appreciate or understand the severity of Mr. Noonan's chronic and severe medical conditions and did not allow him to have prescribed medication to treat them.

103.  The County and Corrections Defendants individually and collectively violated their duty of care to Mr. Noonan in that they failed to report Mr. Noonan's suicidal statements to any physician or psychologist who could have addressed them, either at the jail or at the hospital.

104. The County Defendants, including John and Jane Does, individually and collectively violated their duty of care to Mr. Noonan in that they failed to properly train and supervise their employees working in the jail to be able to handle medical and mental health emergences such as Mr. Noonan was experiencing.

105. The County Defendants, including John and Jane Does, individually and collectively violated their duty of care to Mr. Noonan in that they failed to properly train and supervise their employees working in the jail on the policy of the National Commission on Correctional Health Care to provide therapeutic medications, including opioids, when they are medically necessary, i.e., when a patient such as Mr. Noonan is functioning poorly and his or her pain is not well controlled.

106. The County and Corrections Defendants' individual and collective failures as described above constitute egregious violations of their duty of care to Mr. Noonan.

107.  As a direct and proximate result of the negligence of the County and Corrections Defendants, as aforesaid, Plaintiff's decedent continued to suffer from untreated medical and mental health problems, including pain, anxiety, medication withdrawal and suicidal thinking and intent, which caused and contributed to his pain and suffering and ultimately, his death.

WHEREFORE, Plaintiff Shane Noonan, as personal representative of the Estate of Jeffrey Noonan, prays that this honorable Court enter judgment in his favor and against the County and Corrections Defendants and award the Estate, pursuant to 18-A M.R.S.A. § 2-804 fair and just compensation for the injuries suffered on account of Jeffrey Noonan's death, including but not limited to:

a)      pursuant to 18-A M.R.S.A. § 2-804(b), fair and just compensation for the loss of comfort and society and companionship of Jeffrey Noonan;

b)      pursuant to 18-A M.R.S.A. § 2-804(b), damages to compensate the Estate of Jeffrey Noonan for the reasonable expenses of medical care and treatment and for reasonable funeral expenses that it incurred;

c)      pursuant to 18-A M.R.S.A. § 2-804(c), damages for the conscious pain and suffering endured by Jeffrey Noonan prior to his death; and

d)      such further relief as this Court deems just and appropriate.

### JURY DEMAND

A trial by jury is demanded.

Dated at Saco, Maine this 11th day of January, 2016.

*/s/ Celine M. Boyle, Esq.*
*/s/ Courtney M. Hart, Esq.*
Celine M. Boyle, Esq., Bar No. 9319
Courtney M. Hart, Esq., Bar No. 4127
*Attorneys for the Plaintiff*

SHAHEEN & GORDON, P.A.
199 Main Street
P.O. Box 1179
Saco, Maine 04072
(207) 282-1527